### Elizabeth BOGOSIAN

v.

### James H. WOLOOHOJIAN, et al.

### Civ. A. No. 88–0373B.

United States District Court,
D. Rhode Island.

Aug. 4, 1995.

Eustace T. Pliakas, Tillinghast, Collins & Graham, Providence, RI, Matthew F. Medeiros, Flanders & Medeiros, Providence, RI, Brendan P. Smith, Reilly Law Associates, Providence, RI, William Y. Chaika, Chaika & Chaika, Providence, RI, Michael J. McGovern, Barclay Investments, Inc., Providence, RI, Robert I. Deutsch, Chestnut Hill, MA, John W. Cannavino, Cummings & Lockwood, Stamford, CT, William H. Bright, Jr., and Charles D. Ray, Cummings & Lockwood, Hartford, CT, for Elizabeth V. Bogosian.

Everett C. Sammartino, United States Attorney's Office, Providence, RI, for Internal Revenue Service.

William Richard Grimm, Hinckley, Allen & Snyder, Providence, RI, John H. Blish, and William R. Landry, Blish & Cavanagh, Providence, RI, for James H. Woloohojian, Harry J. Woloohojian, and Woloohojian Realty Corp.

### OPINION

FRANCIS J. BOYLE, Senior District Judge.

Plaintiff has moved to vacate an order entered in this action on June 8, 1993 by a magistrate judge. The Court entered an order on July 13, 1990 (the 1990 order) which provided for the payment to Plaintiff directly by Defendant corporation the sum of $10,000 monthly for the sustenance of Plaintiff during the pendency of this action. The magistrate judge's order redirected the monthly payments to an interest bearing escrow account in which Plaintiff has no current right to payment. Plaintiff contends that the magistrate judge's order is invalid and that she is entitled to receive prospective monthly payments from Defendant corporation together with the funds paid into the account which, in May, 1995, totaled $265,625.68.

Plaintiff, as the owner of one third of the stock of Woloohojian Realty Corporation, brought this action on June 23, 1988. Plaintiff sought a liquidation of the Corporation under the provisions of R.I.Gen.Laws § 7–1.1–90, *et seq.* (1992). As authorized by R.I.Gen.Laws § 7–1.1–91 (1992), on February 16, 1989, the corporation elected to purchase Plaintiff's stock at "fair value." Thereupon a lengthy valuation effort was commenced. A Special Master was appointed by the Court on August 1, 1990 under the provisions of Fed.R.Civ.P. 53. On July 13, 1990, in response to a motion filed by Plaintiff, based upon Plaintiff's then lack of financial resources and federal income tax liabilities, the Court granted Plaintiff's motion directing Defendant corporation to pay to Plaintiff a lump sum of $100,000 and a monthly payment of $10,000 pending a determination of the value of Plaintiff's stock. The order directed that payments should be credited against the amount ultimately determined to be due Plaintiff. Defendant took an appeal from this order. The Court of Appeals affirmed the order. *See Bogosian v. Woloohojian Realty Corp.*, 923 F.2d 898 (1st Cir. 1991). In that opinion, the Court of Appeals held that Defendants could take an immediate appeal because the order was a "mandatory injunction." *See id.* at 903. Following this abortive effort to avoid making payments to Plaintiff, Defendant tendered two checks purporting to comply with the Court's July 13, 1990 order but made payable to Plaintiff and one of Plaintiff's former law firms which claimed legal fees were due it. Plaintiff moved to have Defendants held in contempt. By order dated January 25, 1991 and after a hearing on the motion, the Court directed that two checks be issued payable solely to Plaintiff and directed specifically that, "[a]ll future interim monthly payments under the Court's July 30, 1990 order are to be made payable solely to Elizabeth V. Bogosian."

On April 13, 1993, Plaintiff filed what was labeled a "Motion for a Protective Order." However Plaintiff did not seek the usual protective order. Plaintiff had been represented in this and other litigation by a series of lawyers. Plaintiff's former lawyers as well as the Internal Revenue Service had notified

Defendant corporation that they had liens on Plaintiff's property for satisfaction of their claims. Plaintiff sought an order protecting her allowance under the 1990 order from those claims. The motion was referred to a magistrate judge by means of the Court's usual form of order requesting a report and recommendation. The Order in it entirety provided, "[r]eferred to U.S. Magistrate Judge to hear the parties and to submit a Report and Recommendation to the Court under the provisions of 28 U.S.C. § 636(b)(1)(A)."

Instead of a report and recommendation, on June 8, 1993, the magistrate judge entered an order which authorized the creation of an escrow account in the name of Defendant's law firm as escrow agent for the benefit of Plaintiff and directed further payment of the monthly allowance to the escrow account. The order further provided that "[t]he proceeds of such Escrow Account shall be distributed upon further order of the Court after resolution of Woloohojian's Realty Corp.'s Motion For Interpleader."

The motion for interpleader was ultimately denied on May 17, 1995. No effort was made to obtain a review of the magistrate judge's order. No report and recommendation has ever been issued and no notice has ever been given Plaintiff as required by *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986), and local rule 32(c)(3), D.R.I.R. 32(c)(3). The prevailing party has not submitted a form of order to this Court as required by Rule 32(c)(3), as they must in the absence of objection. Had the prevailing party submitted such a form of order it would have been rejected as in conflict with the 1990 order. The present form of rule 32(c)(3) was adopted on November 3, 1978. At that time, the existing rule provided that if there were no timely objection, "the finding or the report and recommendation of the magistrate shall constitute the order of the court." This rule allowed a report to become a order of the court if a party failed to make a timely objection, whether or not the report was consistent with the then status of the action. It also allowed the entry of an order which did not have the approval of the Judge assigned to the action. Hence, the rule was modified to require the addition of the requirement that the Judge assigned to the action approve the report.

From the date of the order to the April 1995 payment, $10,000 was paid monthly to the account. Plaintiff received nothing. Escrowed payments were deposited in two banks, Fleet Bank and State Street Bank. On May of 1995, the account consisted of $103,087.38 in the Fleet Bank account and $162,538.50 in the State Street Bank account.

Plaintiff, with new counsel, ultimately filed a motion to vacate the magistrate judge's order of June 8, 1993. The motion was granted in part by order of May 16, 1995 insofar as the prospective application of the order was concerned. Immediate resumption of payments directly to plaintiff was ordered. Plaintiff agreed that half of the monthly allowance may be paid to the Internal Revenue Service, the remainder outright to Plaintiff. An order was entered accordingly.

One of the law firms, Flanders & Medeiros, which had a claim for services rendered to Plaintiff secured by a U.C.C. Financing Statement, had obtained a judgment against Plaintiff in an action pending and assigned to another Judge of this court. A bank creditor of Plaintiff also obtained a judgment against Plaintiff in another action pending before a third Judge of this court. Both of the other Judges authorized execution of the respective judgments. The law firm of Flanders & Medeiros has served trustee process on State Street Bank to require the funds in the bank's possession be delivered to it. Flanders & Medeiros had been Plaintiff's lawyer and it obtained the order of July 13, 1990, representing that Plaintiff was essentially destitute and in dire need of immediate and continuing funds. It was represented that as a result of the differences among the parties, Plaintiff no longer was gainfully employed. Flanders & Medeiros were also Plaintiff's counsel in the appeal taken by Defendant from that order. Plaintiff prevailed in that appeal on the merits of the award, but lost on a claim that the appeal was from an interlocutory order and therefore premature. The Court of Appeals held that the order was a mandatory injunction and therefore the ap-

peal was not premature. *See Bogosian v. Woloohojian Realty Corp.*, 923 F.2d 898, 903 (1st Cir.1991).

The remaining question concerns the disposition of the monies held in the escrow account. Without hesitation it must be said that the funds belong to Plaintiff. The monies were ordered paid to her by means of a mandatory injunction. This result is required whether the magistrate judge's order of June 8, 1993 is considered void, invalid, unauthorized or erroneous for the reasons stated hereafter.

The 1990 order is a mandatory injunction. *See Bogosian v. Woloohojian Realty Corp.*, 923 F.2d 898, 903 (1st Cir.1991). It is not an attachment. *See id.* at 901. Since a magistrate judge may not hear a motion for injunctive relief, it follows that a magistrate judge may not modify or revoke a mandatory injunction. *See* 28 U.S.C. § 636(b)(1)(A) (1993); *Clark v. Poulton*, 914 F.2d 1426, 1431 (10th Cir.1990); *In re Morrissey*, 717 F.2d 100, 102 (3rd Cir.1983). Further, the application which precipitated the magistrate judge's dispositive order of June 8, 1993, was referred by the court for a report and recommendation only, not for a disposition. 28 U.S.C. § 636(b)(1)(B) (1993). No appeal or objection was filed with respect to the magistrate judge's order of January 8, 1993. Such a circumstance was colorfully described in *Archie v. Christian*, 808 F.2d 1132, 1134 n. 2 (5th Cir.1987) ("[w]hatever 'jurisdiction' the magistrate derives from the consent of the parties alone is a matter of contract, akin to that exercised by the estimable Judge Wapner").

Under local rule 32(c)(3), if no timely objection is made the prevailing part is to submit a form of order to "the judge to whom the case is assigned." No such order was proffered. One of the obvious purposes for local rule 32(c)(3) is to permit the assigned Judge to preside over the decision making process and to avoid conflicting orders. Surely an Order of the District Court may not be superseded by the unauthorized action of a magistrate judge. *See Taylor v. National Group of Companies, Inc.*, 765 F.Supp. 411 (N.D.Ohio 1990). It must be said that a search of the record does not reveal that the magistrate judge was ever informed that the 1990 Order was a mandatory injunction or that his sole responsibility was to submit a report and recommendation to the Court.

Defendant contends that if it continues to pay the monthly stipend directly to Plaintiff, as has been previously ordered, after having been served with the executions in both of the other actions, it exposes itself to liability from the judgment creditors.

This action was brought under the provisions of R.I.Gen.Laws Sec. 7–1.1–90, et seq. Because Defendant corporation has elected to purchase Plaintiff's one-third interest in the capital stock of the corporation, the present purpose of this action is to ascertain the value of the stock interest and to provide for a distribution to Plaintiff of property or money or both in payment for the stock interest in the corporation. Plaintiff's ownership was transferred to Defendant corporation on February 19, 1989, by operation of the statute. The corporation has enjoyed all of the benefits of stock ownership for more than six years. In the meantime, Plaintiff has neither the stock nor the avails.

The Special Master, in his *Supplementary Report of the Special Master*, filed September 23, 1993, concluded that the value of Plaintiff's stock was $4,901,801. The Court adopted the Report as its findings on April 12, 1995. Under the provisions of section 7–1.1–91 (supra), Plaintiff's stock has effectively been seized and transferred to Defendant corporation. Under this section it is this Court's obligation to establish the "terms and conditions of sale as it determines to be appropriate ..." In a very real sense what has taken place is a private condemnation. The funds for payment subject to the equitable orders of this court as substitute res for the stock.

Furthermore, even if the magistrate judge's order of June 8, 1993 is not totally ineffectual, the 1990 order has never been rescinded; it is still in effect. The magistrate judge's order expressly provides that payment from the escrow account can be made only upon order of the court in this action. It is apparent that on any view of

the circumstances, it is only this Court which can enter an order disbursing the funds. Any other construction of the circumstances would be ludicrous.

Nor can the parties to the present predicament present themselves as innocent bystanders; Flanders & Medeiros and Defendant's law firm were not mere witnesses to the 1990 Order and its effect. Flanders & Medeiros argued for the order based upon the dire financial circumstances of Plaintiff whom it represented. Defendant's law firm opposed the order with uncommon vigor and was granted an immediate appeal because the order was a mandatory injunction. They can not now cry foul because of the success of their earlier efforts.

To be added to the list of reasons why the fund should be paid to Plaintiff is the fact that no judgment has entered as yet in this action. What that judgment will be remains to be seen. It may be that the court will order satisfaction of the purchase price by the transfer of particular parcels of real estate, at least in part, a result contended for by Plaintiff. What is clear beyond peradventure is that it is for this Court to determine, under the precise terms of the statute, the "terms and conditions of sale as it determines appropriate." Until this Court has had the opportunity to do so, Plaintiff does not have a definable interest in any specific property. There is no judgment for Plaintiff which may be levied upon.

If the foregoing does not suffice, the equities of the matter preponderate strongly for Plaintiff. It is difficult to explain from the point of view of the attaching law firm that obtained the order based upon a plea of poverty. In it's memorandum seeking the 1990 order Flanders & Medeiros argued that this sum "is a small portion of the substantial sum she is entitled to from WRC's purchase of her shares." Plaintiff's Memorandum in Support of Motion or an Interim Distribution at 2. There was no suggestion that the payments were to be used to pay legal fees of Flanders & Medeiros. There was no suggestion that the funds were to used to pay any legal fees.

For the foregoing reasons, Defendant is directed to arrange immediate payment to Plaintiff which is rightly hers and which should have been paid pursuant to the 1990 order, together with any interest earned thereon.

**SO ORDERED.**